# United States Bankruptcy Court
# District of Massachusetts

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 07-41243-HJB |
| DARYL WITHROW, | ) |  |
|  | ) |  |
| Debtor. | ) |  |

## MEMORANDUM OF DECISION

Before the Court is its Order, dated September 6, 2007, requiring Attorney Francis J. Lafayette ("Attorney Lafayette"), counsel to Daryl Withrow (the "Debtor"), to show cause why Attorney Lafayette should not, pursuant to Fed. R. Bankr. P. 9011(c)(1)(B) ("Rule 9011"), be sanctioned on account of alleged misrepresentations, omissions and errors in the Debtor's bankruptcy schedules, Statement of Financial Affairs and Rebuttal of Presumption of Abuse (the "Show Cause Order").

I.  FACTS AND TRAVEL OF THE CASE

The relevant facts are either: (1) not materially disputed, having been drawn from the docket, pleadings and testimony provided by Attorney Lafayette as described below; or (2) found, pursuant to Fed. R. Bankr. P. 7052, after evidentiary hearing.

On April 9, 2007, Attorney Lafayette filed the instant Chapter 13 bankruptcy case. At the outset, Attorney Lafayette filed only the petition and the matrix of creditors. On the

following day, the Court ordered the Debtor to file the remaining documents no later than April 25th. On April 20th, however, the Debtor moved to convert his case from Chapter 13 to Chapter 7, alleging that, after consulting his attorney, he now believed that conversion of the case to Chapter 7 was in his best interest. On that same date, the Court converted the case to Chapter 7. A new Order to Update was subsequently issued, requiring that the outstanding documents be filed by May 8th.[1] On May 9th, a day late, Attorney Lafayette filed a "Motion to Extend Time: Expedited Determination Requested," requesting that the May 8th deadline be extended to May 25th, because the Debtor had allegedly failed to appear for appointments with his attorney. The motion failed to explain why Attorney Lafayette filed the motion after the expiration of the court-ordered deadline. Nonetheless, the motion was allowed.

On May 24, 2007, Attorney Lafayette filed, in addition to the remaining outstanding documents, a "Rebuttal of Presumption of Undue Hardship" (the "Rebuttal"). Presumably, the Rebuttal was filed in order to counteract the presumption of abuse otherwise suggested by the calculations in the Debtor's Official Form B22A. In the Rebuttal, the Debtor stated that consideration of "special circumstances" was required in order to properly evaluate the Debtor's income and expenses; and that the resulting changes justified the preservation of a Chapter 7 discharge. First, the Debtor noted that while Official Form B22A, Item 10 set forth his average monthly income as $5,333.33, that amount was attributable to overtime pay and he "no longer ha[d] substantial over-time pay" as of the date of the filing

---

[1] Outstanding documents included the Attorney Disclosure Statement, Schedules A-J, Statement of Financial Affairs, Summary of Schedules, Statement of Post-Petition Creditors, Statement of Current Monthly Income, Means Test Form B22A and the Statistical Summary of Certain Liabilities. The Statement of Intent, however, was separately due on May 23, 2007 and no extension was sought for the filing of that document. It was filed, but a day late, on May 24th.

2

of the Rebuttal.  The Debtor maintained that his actual average monthly income was now in the amount of $4,000.00.  Second, the Debtor now anticipated a need to provide support to his mother in the monthly amount of $100.00 on account of a stroke she suffered after the filing of the Debtor's Chapter 13 case.

On June 4, 2007, the Chapter 7 Trustee, Joseph B. Collins, Jr. (the "Chapter 7 Trustee"), filed a response to the Rebuttal (the "Rebuttal Response"), asserting that the Rebuttal was "false and misleading" for several reasons, including:

> 1. the $5,333.33 average monthly income reported in the Rebuttal nowhere appeared on the Debtor's Form B22A, Item 10; the Debtor's Form B22A, Item 12 set forth an average monthly income in the amount of $4,834.22, not $5,333.33;
>
> 2. despite the Debtor's allegations to the contrary, recent pay stubs for postpetition work revealed that he continued to receive overtime income;
>
> 3. the Debtor's mother suffered her stroke *prior to* and not *after* commencement of the case; and
>
> 4. the veracity of the Debtor with respect to his financial support of his mother was undermined by his inability at the Section 341 meeting to remember her current address.

The Court conducted a hearing on the Rebuttal on June 13, 2007, but then decided that the propriety of the Debtor obtaining a Chapter 7 discharge was not ripe for determination because the United States trustee (the "UST") had not yet taken a position on whether a Chapter 7 discharge in this case would be abusive.  See 11 U.S.C. § 704(b).

On July 17, 2007, Attorney Lafayette filed his "First Interim Application for Compensation" (the "Fee Application"), requesting Court approval of $1,195.00 in

3

professional fees.[2]  The Chapter 7 Trustee responded with an objection.  After repeating the concerns set forth in his Rebuttal Response, the Chapter 7 Trustee noted also that the Debtor had testified at the Section 341 meeting to having accounts at seven different banks, but had reported only one on Schedule B.  Because the Debtor testified at the Section 341 meeting that he had  "fully and truthfully" informed counsel of the facts and circumstances related to the schedules, Statement of Financial Affairs and the Rebuttal, the Chapter 7 Trustee concluded that any misrepresentations, omissions or errors were the fault of Attorney Lafayette.  The UST also objected to Attorney Lafayette's Fee Application, adopting the reasons proffered by the Chapter 7 Trustee.

On August 3, 2007, the Debtor filed an affidavit in response to the Chapter 7 Trustee's objection to Attorney Lafayette's Fee Application.  The affidavit sought to clarify the discrepancies between the schedules, the Statement of Financial Affairs, the testimony at the Section 341 meeting and the Rebuttal.  The Debtor simply stated that his omission of current and recently closed bank accounts was a matter of personal forgetfulness.[3]  He further admitted to being mistaken about the precise date of his mother's stroke but emphasized that he was caring for her both before and after the date of the bankruptcy case filing.  The Debtor did not deny having been unaware of the physical address of his mother's residence, but maintained that he does assist his mother financially by giving her

---

[2] Attorney Lafayette is required to file fee applications in all cases in which he represents debtors in this District.  See In re LaFrance, et al., 311 B.R. 1, 25 (Bankr.  D.  Mass. 2004).

[3] On the Debtor's original Schedule B, only one bank account was disclosed: a checking account with Banknorth in the amount of $5.00.  In his affidavit filed August 3, 2007, however, the Debtor reported that his current account was at United Bank and that he had four other open bank accounts with the following balances: Banknorth ($0.25), RBC Centura ($4.87), Citizen's Bank ($0.00) and Sovereign Bank ($2.00).  Further, the Debtor stated that accounts with the Navy Credit Union and Bank of America were closed prior to the filing of the Debtor's bankruptcy case.  The originally filed Statement of Financial Affairs, however, reported that the Debtor had not closed any financial accounts in the year prior to filing.

4

at least $50.00 twice a month and providing her with transportation. Again, the Debtor stated that he "fully and truthfully" informed his counsel of the facts and circumstances surrounding the schedules, Statement of Financial Affairs and the Rebuttal. He disputed the Chapter 7 Trustee's conclusion that he had provided "misrepresentations, omissions and errors" to the Court.

The Court held a hearing on the Fee Application on September 5, 2007. There, the Chapter 7 Trustee reported to the Court a "settlement" with Attorney Lafayette, pursuant to which the Fee Application would be allowed, less $1,000.00 to be paid directly to the Chapter 7 Trustee to compensate him for services rendered in the case. The UST had no objection to the proposed settlement. This Court, however, was not comfortable approving a settlement wherein Attorney Lafayette would pay money to the Chapter 7 Trustee to resolve the Chapter 7 Trustee's concern that Attorney Lafayette failed to do due diligence in investigating the Debtor's prepetition financial affairs. If the Chapter 7 Trustee's allegations were correct, the Court noted, it preferred to rule that Attorney Lafayette's $1,000.00 payment to the Chapter 7 Trustee was in the nature of a Rule 9011 sanction. Attorney Lafayette objected to that characterization and requested that the Court hold an evidentiary hearing on the Rule 9011 issues. Accordingly, the Court issued an order continuing the Fee Application generally, and scheduled the instant Show Cause Order for an evidentiary hearing on November 7, 2007.

On October 18, 2007, the Chapter 7 Trustee filed an affidavit with this Court citing additional concerns with the Debtor's schedules. First, he noted that Schedule C provided no exemption for the equity either in the Debtor's residence listed in Schedule A

5

(approximately $14,000) or automobile listed in Schedule B (approximately $4,200.00).[4] According to the Chapter 7 Trustee, he informed Attorney Lafayette of those omissions at the Section 341 meeting held on June 4, 2007. Attorney Lafayette responded that he would amend Schedule C, but he did not do so until November 6, 2007 (approximately five (5) months later and, not so coincidentally, on the day prior to the evidentiary hearing on the Show Cause Order).[5] Second, the Chapter 7 Trustee more specifically outlined the bank accounts that the Debtor testified at the Section 341 meeting were open or closed prior to filing his bankruptcy case, and the amounts contained in each account.[6] Based on the discrepancies in the Debtor's schedules, Statement of Financial Affairs and the Debtor's testimony at the Section 341 meeting, the Chapter 7 Trustee repeated his conclusion that the schedules and Statement of Financial Affairs were "materially false and misleading". And the Chapter 7 Trustee reiterated his concerns, first raised in the Rebuttal Response, regarding errors in the Debtor's identification of overtime pay, average monthly income and the additional expenses relating to caring for the Debtor's mother. The Chapter 7 Trustee urged the Court to reach the conclusion that the Rebuttal was drafted to conceal and

---

[4] The Debtor's original Schedules A and D represent that the Debtor owns real estate in Springfield, Massachusetts valued at $170,718.00 with secured mortgages in the aggregate amount of $156,693.00. Original Schedule B indicates that the Debtor owns a 1990 Chevy Lumina with a current value of $4,200.00. Schedule D did not show any liens or encumbrances on this vehicle.

[5] On November 6, 2007, the Debtor's amendments to Schedules A, B, C and Statement of Financial Affairs were filed, but the filing was deficient, as it did not include a motion to approve the amendments nor did it include a certificate of service. Following court notification of these deficiencies, they were remedied.

[6] The Chapter 7 Trustee reported in his affidavit that at the Section 341 meeting the Debtor testified that he owned the following accounts at the date of the petition: Navy Federal Credit Union ($10.00), United Bank ($200.00 overdrawn), Sovereign Bank ($0.00), RBC Centura Bank ($15.00 to $25.00) and Citizens Online Bank ($1.00). An account with Bank of America had been closed in December of 2006.

misstate facts relevant to the Court's consideration of a presumption of abuse under § 707(b)(2).

The Debtor responded to the Chapter 7 Trustee's affidavit on November 4, 2007 with a counter-affidavit. There, the Debtor reported that his schedules had now been amended to accurately reflect the true value of his residence and vehicle.[7] The Debtor stated that the original listing of only one open bank account was due to a misunderstanding on his part and that the values provided at the Section 341 meeting regarding the amounts in open bank accounts were also estimates. The Debtor denied testifying that he closed an account with Bank of America prior to filing for bankruptcy. He also took issue with the Chapter 7 Trustee's assessment of the circumstances surrounding his overtime pay. The Debtor stated that he was told by his employer that he was not going to receive overtime pay, though the employer did provide four (4) hours of overtime per pay period for a certain period of time. He averred that there was currently no overtime available. The Debtor also provided an affidavit from his mother regarding his involvement in her life.[8] Lastly, the Debtor introduced a new explanation for discrepancies between his testimony at the Section 341 meeting and the documents filed in this case. The Debtor stated that he had been taking two medications for hypertension and blood pressure which caused him to

---

[7] The Debtor stated in paragraph 6 of this counter-affidavit that his Schedule A was amended to show a current real estate value of $179,900.00 in his residence. In the very next paragraph, however, the Debtor stated that he had concluded that the value of the residence was $177,000.00, based on discussions between himself and his banker and through a comparison of real estate values in the vicinity.

[8] Flora Withrow, mother of the Debtor, stated that she suffered the stroke prior to the date of her son's bankruptcy case filing, and that the Debtor provided care for her prior to the date of the case filing. She stated that he provides at least $50.00 each pay period and has out-of-pocket expenses when providing her transportation. Further, she stated that the Debtor has had a memory problem regarding the address of her residence.

become drowsy and dizzy, and to "not have it all there" when answering questions at the Section 341 meeting. Regardless, the Debtor stated that at no time did he intend to provide materially false or misleading information at the Section 341 meeting or in his bankruptcy petition.

The evidentiary hearing on this Court's Show Cause Order was held on November 7, 2007. Attorney Lafayette's testimony, answering questions from both the UST and the Chapter 7 Trustee, is best summarized as follows:

1. Attorney Lafayette conceded that the Debtor's original schedules claimed no exemption either for the Debtor's residence or his vehicle, despite the equity in each. He testified that he told the Chapter 7 Trustee at the Section 341 meeting on June 4, 2007 that it was his intention to amend the Debtor's Schedule C to include exemptions in the Debtor's real estate and vehicle (but until November 6, 2007, none had been filed). He further admitted to helping the Debtor prepare the November 4, 2007 affidavit which stated that amendments to the Debtor's schedules *had been* filed, despite the fact that the amendments were not filed with the Court until *after* the filing of the Debtor's affidavit.

2. Attorney Lafayette contended that the omission of the open or recently closed bank accounts on the schedules and Statement of Financial Affairs was due to the Debtor's forgetfulness, which Attorney Lafayette attempted to justify by noting that all of the accounts were in negligible amounts.

3. The UST inquired about the discrepancy between (a) the Rebuttal which provided that the Debtor's average current monthly income was $5,333.33, supposedly referencing Form B22A, Line 3; and (b) the Debtor's actual Form B22A, Line 3, which set forth current monthly income at $4,834.22 and not $5,333.33.  The UST also inquired with respect to the discrepancy between (a) the Debtor's Rebuttal which listed his actual current income without overtime pay at $4,000.00; and (b) Schedule I which listed the same income without overtime pay at $3,309.73.  Attorney Lafayette responded to the first discrepancy by conceding that the amount of $5,333.33 in the Rebuttal was a mistake on his part.  But in response to the Court's inquiry as to the latter discrepancy - actual income in the amount of $700.00 - Attorney Lafayette seemed confused by the line of questioning, and finally, the Court just gave up.  Indeed, throughout Mr. Lafayette's testimony, he appeared completely unprepared for the evidentiary hearing which he himself had requested.

4. Finally, the UST questioned Attorney Lafayette regarding the discrepancy between (a) Debtor's Schedule J, Line 17, which provided that the Debtor did not reasonably anticipate a significant increase or decrease in expenses in the upcoming year; and (b) the Rebuttal, which provided that the Debtor anticipated that he would have to assist his mother for an indefinite period of time because of her stroke suffered after the filing of the bankruptcy case. Attorney Lafayette testified that the omission of financial support from Schedule J was due to the Debtor's not having provided monetary support at the time of filing the petition but anticipating the expense at the time of

filing the Rebuttal. (But note that the Debtor provided his own affidavit and that of his mother stating that he had been providing direct or indirect financial support for his mother.) Attorney Lafayette explained further that he and the Debtor generated the Rebuttal late at night and the Debtor may have confused the date of their first meeting, November 30, 2006, with the actual date of filing. He explained that the Debtor had a memory problem and that he simply typed the information contained in the Rebuttal as it was presented to him by his client. Attorney Lafayette testified that it was around the time of filing the Rebuttal that Attorney Lafayette became ill and was hospitalized, impacting his handling of the case.[9]

## II. POSITIONS OF THE PARTIES

The Debtor states or is cited as saying that he "fully and truthfully" disclosed the information of his financial affairs to his counsel, Attorney Lafayette, in multiple filings with the Court. Thus, the UST and the Chapter 7 Trustee contend that Attorney Lafayette is responsible for the misrepresentations, omissions and errors found within the documents filed in the Debtor's bankruptcy case. They believe that Attorney Lafayette's failure to provide due diligence on the Debtor's behalf is amply demonstrated by his failure to claim exemptions to which the Debtor was entitled, his (at best) insufficient inquiry from the Debtor about bank accounts which were open or recently closed at the time of filing the

---

[9] Attorney Lafayette introduced a package of documents to validate his claim of infirmity. Because of their personal nature, the Court will impound them. But this is hardly the first time that Attorney Lafayette has relied on ailments as an excuse for shoddy representation of consumer debtor clients. See In re LaFrance, et al., 311 B.R. at 24-25; In re LaClair, et al., 360 B.R. 388, 397 (Bankr. D. Mass. 2006). The Court's responses in LaFrance and in LaClair are adopted here by reference.

10

petition and by misstatements concerning the existence and amount of the Debtor's income, as well as the circumstances surrounding his mother's condition and the assistance provided to her by the Debtor.

Attorney Lafayette disagrees. He asserts that neither he nor the Debtor intended to mislead the Chapter 7 Trustee. While he admits errors with the filed documents, Attorney Lafayette attributes them to varying income statements, accidental omissions by the Debtor and medical conditions suffered both by him and the Debtor.

III.   DISCUSSION

Federal Rule of Bankruptcy Procedure 9011 provides in relevant part:

**(b) Representations to the Court.**

> By presenting to the court (whether by signing, filing, submitting, or later advocating)[10] a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[10] It is immaterial that a document is submitted electronically. Massachusetts Local Bankruptcy Rules, Appendix 8, Rule 8 provides in relevant part:

(a)   The user log-on and password required to submit documents to the ECF System serve as the Registered User's signature on all electronic documents filed with the Court. They also serve as a signature for purposes of of Fed. R. Bankr. P. 9011, the Federal Rules of Bankruptcy Procedure, the local rules of this Court, and any other purpose for a which a signature is required.

11

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (**c) Sanctions.**
>
> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>> (1) How Initiated.
>>  . . .
>>> (B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
>>
>> (2) Nature of Sanction; Limitations.
>> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

This Court has long believed that debtors' counsel have Rule 9011 obligations, even with respect to a debtor's schedules, statement of affairs and other documents disclosing assets, which debtors - but not counsel - are required to sign. Rule 9011(b) is not limited to statements below which appear an attorney's signature. Rule 9011(b) provides that

12

filing, submitting or even advocating with respect to a document filed with a court has the same effect as signing the document. It can not be otherwise. An attorney for a debtor can not shield him or herself with respect to a document, such as bankruptcy schedules or the statement of affairs, containing knowingly false information, by arguing that, despite the attorney's knowledge of the falsity of the information or the client's reckless disregard for its truth, Rule 9011 does not apply because the attorney did not sign the document.

But regardless of whether that view was well supported prior to October 17, 2005, any controversy as to its correctness has been mooted by amendments to § 707(b) of the Bankruptcy Code adopted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The revised § 707 provides in relevant part:

> (b)
> . . . .
> (4)
> . . . .
> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>
> > (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> >
> > (ii) determined that the petition, pleading, or written motion—
> >
> > > (I) is well grounded in fact; and
> > >
> > > (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).
>
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

And, completing the loop, Official Form 1 (Voluntary Petition) requires a signature by the debtor's attorney, if any, and now notes with reference to that signature:

> "In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect."

Three problems (and probably more) remain. First, what is a certification? It is nowhere defined in the Bankruptcy Code. It conotes more than a statement, yet it is obviously less than a verification under oath. This Court believes that a certification is an unsworn verification, that is, a representation to the Court that - while not under oath to which criminal penalties would attach for intentional breach - is rather a specific assurance that the statement has not been made lightly and that it is the product of an investigation insofar as practical under the circumstances, within the attorney's control, and designed to discover the truth.

Second, how extensive must this investigation be? The language of § 707(b)(4)(C) and (D) and the history of Rule 9011 clarifies that the investigation need only be a "reasonable" one. In re D.C. Sullivan Co., Inc., 843 F.2d 546, 598-99 (1st Cir. 1988) ("Subjective good faith is not the issue; generally, Rule 9011 demands that counsel's actions comport with an objective standard of lawyerly performance."). Indeed, courts must be very, very, very careful not to impose on debtors' counsel burdens which are impractical under the circumstances of their representation. Bankruptcy judges should appreciate their vulnerability to falling down the infamous "slippery slope" and bear in mind that an attorney for a debtor is not a guarantor of the accuracy of any information contained in bankruptcy documents prepared by the attorney with information provided by that debtor. Some

debtors are simply not capable of producing all of the documentation that an attorney might prefer. Such a debtor should not be turned away from legal representation or asked for a fee which is more consistent with an audit than with the preparation of bankruptcy schedules. Nor should an attorney fear to represent such a debtor. Judges can be relied upon, in most instances, to recall the difficulties of private practice.

Inasmuch as Rule 9011 and the § 707(b)(4)(C) standard is to be a reasonable one, it must be tested objectively. Id. Accordingly, it seems to this Court that the answers to at least the following questions are germane to a Rule 9011 and § 707(b)(4)(C) analysis: (1) did the attorney impress upon the debtor the critical importance of accuracy in the preparation of documents to be presented to the Court; (2) did the attorney seek from the debtor, and then review, whatever documents were within the debtor's possession, custody or control in order to verify the information provided by the debtor; (3) did the attorney employ such external verification tools as were available and not time or cost prohibitive (e.g., on-line real estate title compilations, on-line lien search, tax "scripts"); (4) was any of the information provided by the debtor and then set forth in the debtor's court filings internally inconsistent - that is, was there anything which should have obviously alerted the attorney that the information provided by the debtor could not be accurate; and (5) did the attorney act promptly to correct any information presented to the Court which turned out, notwithstanding the attorney's best efforts, to be inaccurate. These questions can be further simplified and reduced to one question, their common denominator: Did the attorney do his or her level best to get it right? More can not, and should not, be asked of any attorney.

And when an attorney appears to have provided less, an inquiry under Rule 9011 and § 707(b)(4)(C) is proper.[11]

On the facts here, this Court can not find that Attorney Lafayette has met his Rule 9011 and § 707(b)(4)(C) obligations. After all of the argument and testimony, the Court still is not sure what the Debtor earned in the six months prior to the filing of the petition or what the Debtor earns now. Nor is the Court sure whether the Debtor intended to mislead the Court with respect to the information provided in his bankruptcy papers or his Section 341

---

[11] As the Court in In re Robertson cogently explained:

> Under new § 707(b)(4)(C), attorneys are subject to a statutory "automatic certification of meritoriousness" as to any "petition, pleading, or written motion" signed by them. This certification is analogous to that long imposed by Fed. R. Bankr.P. 9011(b), though the statute uses part of the language from an earlier version of that rule. Another automatic certification is imposed by new § 707(b)(4)(D). It is triggered by counsel's signature on the client's bankruptcy petition, which activates a deemed representation that "the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect." Though this new verbiage has no directly-associated enforcement mechanism, § 707(b) now contains a basis in statute for the bankruptcy court to impose sanctions. These can take the form of "all reasonable costs" incurred by a successful movant under § 707(b), where "the action of the attorney for the debtor in filing a case under [the Bankruptcy Code] violated rule 9011 of the Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 707(b)(4)(A)(i)-(ii). It also provides for "the assessment of an appropriate civil penalty against the attorney for the debtor," § 707(b)(4)(B)(i), payable to the trustee or the UST, § 707(b)(4)(B)(ii), if "the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure," 11 U.S.C. § 707(b)(4 ) (prefatory language). These provisions are worded in a cumbersome fashion and they are clumsily organized. With them being references to readily-amendable rules of court procedure that were not legislatively adopted, their mere placement in a statute is somewhat counterintuitive. It is not clear exactly how they are to be applied, and they may not be as baleful as they first may seem. *See* David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005,* 15 Am. Bankr.Instit. L.Rev. 223, 294-295 (2007); Henry J. Sommer, *Making Sense Out of Nonsense: Representing Consumers Under the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,"* 79 Am. Bankr.L.J. 191, 204-206 (2005). But, their general drift is clear: debtors' counsel are to exercise significant care as to the completeness and accuracy of *all* recitations on their clients' schedules, after they have made a factual investigation and legal evaluation that conforms to the standards applicable to any attorney filing a pleading, motion, or other document in a federal court. The content of a debtor's petition and schedules is relied on, and should have the quality to merit that reliance. (Critic Sommer, 79 Am. Bankr.L.J. at 206, questioned whether the new verbiage worked any change from preexisting law. He had a point, though an academic one only.)

370 B.R. 804, 809 fn.8 (Bankr. D. Minn. 2007).

meeting testimony. But the Court is sure of this - that Attorney Lafayette, at the very least, failed to (1) properly review information provided by the Debtor with respect to his prepetition income; (2) identify contradictions and inconsistencies in the schedules, Statement of Financial Affairs, Rebuttal and affidavits submitted on behalf of the Debtor before the filing of those documents; (3) promptly correct those contradictions and inconsistencies, even when identified by the Chapter 7 Trustee, on anything close to a timely basis; and (4) to place himself in a position of being able to explain the reasons for those contradictions and inconsistencies to the Court even in the context of an evidentiary hearing of which he had more than adequate notice. Certainly, there is no bright line that surrounds § 707(b)(4)(C) and (D) and Rule 9011. But wherever that line lies, this Court agrees with the Chapter 7 Trustee and the UST that Attorney Lafayette has crossed it.     What remains is the final question; that is, what form of sanction is appropriate. The determination of the amount of any sanction ought to take into account a number of factors, including the egregiousness of the conduct complained of, the extent of the harm caused, the deterrence to others of repeating the conduct and whether the conduct is repetitive of conduct for which the actor has been previously criticized.

In the LaFrance case, this Court described Attorney Lafayette's practices as "sloppy, careless and unprofessional." Id. at 25. In response, fees were disallowed and ordered disgorged, Attorney Lafayette was ordered to thereafter deposit all client compensation in his client trust account and not to withdraw funds absent allowance of a fee application, to be filed in each case. The Court contemplated the duration of that procedure to be a year, at most. Nothing changed, however, and, since the issuance of the LaFrance decision, this Court has denied countless fee applications by Attorney Lafayette on account of the same

17

or similar poor quality services. <u>See</u>, e.g., <u>In re LaClair</u>, 230 B.R. 388. The only reasonable conclusion that the Court can draw is that the sanctions were not sufficient to meet their intended goal.

Accordingly, this Court will sanction Attorney Lafayette in the sum of $3,585.00, being three (3) times the amount which he intended to charge his client for the services which Attorney Lafayette undertook. That sanction shall be payable, within thirty (30) days to the bankruptcy estate care of the Chapter 7 Trustee, who can satisfy his compensation from estate funds in the ordinary course. Further, that sanction will not include any disgorgement to the Debtor which the Court may order based on Attorney Lafayette's Fee Application.

IV.   CONCLUSION

This Court finds that Attorney Lafayette has, in his preparation of the schedules, Statement of Financial Affairs and the Rebuttal, violated the terms of § 707(b)(4)(C) and (D) and Rule 9011, and will order Attorney Lafayette to pay to the Chapter 7 Trustee the sum of $3,585.00 within thirty (30) days hereof. An order in support of this Memorandum of Decision will be entered simultaneously hereto.

DATED:   July 3, 2008            By the Court,

                                 *[signature: Henry Jack Boroff]*

                                 _____
                                 Henry J. Boroff
                                 United States Bankruptcy Judge

Case 07-41243    Doc 84    Filed 07/03/08    Entered 07/03/08 09:17:57    Desc Main
Document    Page 20 of 20